UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VERONNE FRANCISQUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| WELLS FARGO BANK, N.A. | ) | NO. 11-10841-JGD |
| AS TRUSTEE OF THE RMAC | ) | |
| REMIC TRUST, SERIES 2009-4 | ) | |
| AND QUANTUM SERVICING | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

March 12, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Veronne Francisque ("Francisque"), has brought this action

challenging the defendants' conduct in connection with the foreclosure sale of her home.

On January 25, 2007, in connection with the refinancing of a 2004 loan, the plaintiff

executed a promissory note in favor of Decision One Mortgage Company LLC, which

was secured by a mortgage on her home executed in favor of MERS as nominee for

Decision One.  The loan was subsequently transferred to the defendant Wells Fargo Bank

N.A., as Trustee of the RMAC REMIC Trust, Series 2009-4 (the "Trustee").  The

defendant Quantum Servicing Corporation ("Quantum") acquired the servicing rights of the loan.[1]

Francisque defaulted on her mortgage, and foreclosure proceedings commenced. Francisque thereafter filed suit in state court seeking to enjoin the foreclosure sale, but her efforts were unsuccessful and the state court denied her motion for a preliminary injunction after a hearing on May 2, 2011. The defendants then removed the matter to this court and proceeded with the foreclosure sale.[2]

In her complaint, Francisque contends that defendants breached the implied covenant of good faith and fair dealing, violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), violated the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and committed unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A. This matter is presently before the court on "Defendants' Motion to Dismiss" (Docket No. 7), brought pursuant to Fed R. Civ. P.

---

[1] All of the details of the loan transaction are not included in the complaint, and there are some inconsistencies between the parties' recitation of facts leading up to the defendants' involvement with the loan. However, the differences are not material to the issues presently before the court. To the extent that the facts are reflected in undisputed documents which are referenced in the complaint, the documents can be considered by the court in connection with the motion to dismiss. Beddall v. State Street Bank & Trust Co., 137 F. 3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

[2] The defendants informed the court that the property was sold to a third party at the foreclosure sale on May 17, 2011. As of the date of the hearing on the motion to dismiss, September 20, 2011, the sale had not been finalized and the plaintiff continued to reside in the property with her three grandchildren.

12(b)(6).  Therein, the defendants contend, <u>inter alia</u>, that Francisque's claim of breach of the implied covenant fails to state a claim upon which relief can be granted, that the federal claims are statutorily time-barred, and that the 93A claim is procedurally deficient.  For all of the reasons detailed herein, the defendants' Motion to Dismiss is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>

Francisque purchased her home in 2004 (the "Property").  <u>Compl.</u> (Docket No. 10) ¶ 19.  Her initial mortgage was with Hong Kong Shanghai Banking Corporation ("HSBC").  <u>Id.</u>  According to Francisque, she was misled by the mortgage broker, and the terms of her loan were different from those to which she had originally agreed.  <u>Id.</u> ¶ 20. Francisque refinanced the loan in 2007.  <u>Id.</u> ¶ 21.  She apparently executed a promissory note to Decision One Mortgage Company LLC in connection with the refinancing, and gave a mortgage to MERS as nominee for Decision One Mortgage Company LLC to secure the loan.[3]  According to the plaintiff, in 2009, her income decreased and she could not meet her mortgage obligations.  <u>Id.</u> ¶ 22.  She began working with the holder of the mortgage to modify payments, but the modified payments remained too high.  <u>See id.</u> ¶¶ 24-25.  On or about November 15, 2010, the loan was transferred to the Trustee, and

---

[3]  In her complaint, the plaintiff is silent as to which entity did the refinancing, although she implies that the loan remained with HSBC at that time.  <u>See</u> <u>Compl.</u> ¶¶ 21-23.  The defendants contend that the 2007 loan was with Decision One Mortgage Company LLC, and this is confirmed by recorded loan documents.  <u>See</u> <u>Defs. Mem.</u> (Docket No. 8) at 3.  <u>See also</u> Docket No. 5 (assignment of Francisque's 1/25/07 mortgage from MERS as Nominee for Decision One to Trustee).  All parties agree that the 2007 loan was eventually transferred to the Trustee.

Quantum became responsible for servicing the loan.  See id. ¶ 26; Defs. Mem. at 3;

Docket No. 4 (Defendant's Motion to Amend Caption).

According to the Complaint, throughout the remainder of 2010, Quantum informed

the plaintiff that her only options were to sell her property through a short sale, provide

the defendants with a deed in lieu of foreclosure, or reinstate the loan.  Compl. ¶¶ 28-32.

Apparently, however, there were also some efforts to resolve the situation in a manner

that would be more favorable to Francisque.  Specifically, according to the Complaint, on

or about February 3, 2011, Quantum "pre-qualified Plaintiff for the government's Home

Affordable Refinancing Program ('HARP') through 1st Alliance Lending LLC ('1st

Alliance')."  Id. ¶ 34.  According to the defendants, however, because the plaintiff did not

qualify for an in-house loan workout, "in February 2011 Quantum referred her to 1st

Alliance Lending LLC for review under HOPE for Homeowners Program ('H4H'),"

which is a different program from the HARP program.  Defs. Mem. at 3 & n.3.  In any

event, it is undisputed that Francisque worked with 1st Alliance, not Quantum, in an effort

to modify her loan, and that despite any prequalification, the plaintiff understood that any

refinancing was subject to an appraisal of the property.  Compl. ¶¶ 35-41; Defs. Mem. at

3.

The plaintiff alleges that she submitted all documentation required by 1st Alliance,

and also obtained the necessary homeowner's insurance.  Compl. ¶¶ 37-38.  The appraisal

was completed on March 17, 2011.  Id. ¶ 39.

The plaintiff complains that "[o]n or about March 30, 2011 a foreclosure sale date was scheduled for April 28, 2011 at 10 a.m. despite the fact that 1st Alliance had been working with Plaintiff in having her property appraised by their appraisal company, Nationwide." Id. ¶ 40.  Also according to the plaintiff, on April 11, 2011, 1st Alliance notified her that the refinancing was denied because her 2009 income tax returns did not evidence the rental income she claimed to be receiving.  Id. ¶ 41.  The plaintiff alleges that "the Defendants are reading the rental income on Plaintiff's tax returns incorrectly" and have ignored the explanation of her accountant.  Id. ¶¶ 42-43.  According to the defendants, the plaintiff was not eligible for H4H because she had insufficient income and the appraised value of the property was too low.  Defs. Mem. at 3.  It is undisputed that no refinancing was consummated.

Francisque commenced an action in Middlesex Superior Court on April 27, 2011 seeking to enjoin the foreclosure sale.  Her motion for a preliminary injunction was denied on May 2, 2011.  The case was removed to this court on May 11, 2011.  The property was sold to a third party at the foreclosure sale on May 17, 2011.  See note 2, supra.

Additional facts will be provided below where appropriate.

## IV.  ANALYSIS

### A.    Motion to Dismiss Standard of Review

When confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).  While "detailed factual allegations" are unnecessary to survive a motion to dismiss, the plaintiff need only allege enough facts to "give defendant fair notice of what . . . the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (citations and quotations omitted).  Moreover, the complaint must state a claim that is plausible.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).  Consequently, the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  If, "draw[ing] on its judicial experience and common sense," the court is unable "to infer more than the mere possibility" that a legal violation has occurred, the plaintiff is not entitled to relief. Iqbal, 129 S. Ct. at 1950.  Applying these principles to the instant case compels the conclusion that the complaint should be dismissed.

B.      **Statute of Limitations**

The defendants have moved to dismiss Francisque's claims alleging RESPA and

TILA violations on the grounds that they are time-barred.  For the reasons detailed herein,

this court agrees that the complaint is not timely, and the claims must be dismissed.[4]

### Real Estate Settlements and Procedures Act Claim

Francisque claims that defendants violated RESPA, 12 U.S.C. § 2601 et seq., by

failing to explain the financial impact of her loan's 8.97% interest rate.  Compl. ¶ 49.

Even assuming that this was the rate provided for by the refinanced 2007 loan (and not

the original 2004 loan), plaintiff's suit, commenced in 2011, was untimely.

"The principal purpose of RESPA is to protect home buyers from material

nondisclosures in settlement statements and abusive practices in the settlement process,

both in the actual settlement process and in the servicing of a federally related mortgage

loan."  Gehman v. Argent Mortg. Co. LLC, 726 F. Supp. 2d 533, 540 (E.D. Pa. 2010)

(internal quotation and citation omitted).  Pursuant to 12 U.S.C. § 2614, actions alleging

RESPA violations must be brought either within one or three years "from the date of the

occurrence of the violation" depending on the nature of the alleged violation.  Assuming,

arguendo, that the plaintiff has stated a claim for a violation of RESPA, under either the

one-year or three-year statute of limitations, the suit is not timely and must be dismissed.

See Lass v. Bank of Am., N.A., No. 11-10570-NMG, 2011 WL 3567280, at *6-7 (D.

---

[4]  In light of this ruling, this court will not address the other grounds for dismissal of these
counts asserted by the defendants.

Mass. Aug. 11, 2011) (RESPA claim brought more than one year after the cause of action accrued is time-barred).

Since the plaintiff's claim is premised on a failure to disclose information at the time of the loan closing, the statute of limitations began to run at the closing.  <u>Gehman</u>, 726 F. Supp. 2d at 540 (claim that defendant violated numerous TILA and RESPA provisions by failing to provide required disclosures governed by the one-year statute of limitations which began to run from the date the loan closed), and cases cited; <u>Mantz v. Wells Fargo Bank, N.A.</u>, No. 09-12019-JLT, 2011 WL 196915, at *4 (D. Mass. Jan. 19, 2011) (RESPA claim that defendant failed to adequately disclose loan terms must be brought within one year from the date of the loan).  Since the plaintiff closed her loan on January 25, 2007, the statute of limitations expired on January 25, 2010 at the latest. Because the suit was filed on April 27, 2011, it is untimely.

## **Truth in Lending Act Claim**

Francisque also claims that the defendants violated TILA, 15 U.S.C. § 1601 <u>et seq.</u>, for the same reason they allegedly violated RESPA: failing to explain to her the financial impact of her loan's 8.97% interest rate.  <u>Compl.</u> ¶ 50.  Again, however, this claim is barred by the applicable statute of limitations.

"One purpose of TILA is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'  15 U.S.C. § 1601(a).  Thus, the credit

issuer must disclose the required terms accurately and without misleading statements."
Gehman, 726 F. Supp. 2d at 539-40 (citation omitted).

TILA requires that the borrower bring a claim for damages within one year from the date when the cause of action accrues and, under some circumstances, to bring a claim for rescission within three years from the date when the cause of action accrues. Mantz, 2011 WL 196915 at *3 (citing 15 U.S.C. §§ 1635(f), 1640(e)).  Since the loan closed on January 25, 2007, the statute of limitations began to run on that date.  Cordova v. Banco Bilbao Vizcaya de P.R., 73 F. Supp. 2d 133, 136 (D.P.R. 1999) (under TILA, "[t]he limitations clock began to tick when the loans were consummated, that is, the day after the parties became contractually bound").  Again, as Francisque did not file her complaint until April 27,  2011, her TILA claim is time-barred.[5]

---

[5]  The plaintiff has not alleged that the statute of limitations should be extended on the basis of equitable tolling, nor would that doctrine be applicable here.  "The doctrine of equitable tolling is available for tolling of claims against a lender for failure to make material disclosures in credit transactions, in appropriate circumstances, until the borrower discovers or had reasonable opportunity to discover fraud or nondisclosures that form the basis of suit."  Cordova, 73 F. Supp. 2d at 136.  "Due diligence is a prerequisite for equitable tolling."  Donahue v. United States, 634 F.3d 615, 629 (1st Cir. 2011).  Where, as here, "any alleged misrepresentations or nondisclosures either were discovered or could have been discovered through due diligence by [the plaintiff] no later than the signing of [the promissory] note[,]" equitable tolling is not applicable.  Cordova, 73 F. Supp. 2d at 136.  See also Okoye v. Bank of N.Y. Mellon, No. 10-11563-DPW, 2011 WL 3269686, at *15 (D. Mass. July 28, 2011) (equitable tolling does not extend statute of limitations for TILA claim where plaintiffs were or should have been aware of alleged lack of disclosures within one year of closing).

### C. <u>Implied Covenant of Good Faith and Fair Dealing</u>

Francisque claims that the defendants breached the implied covenant of good faith and fair dealing by "(a) failing to perform loan servicing functions consistent with their responsibilities to Plaintiff; (b) failing to properly supervise their agents and employees, including with[out] limitation, their loss mitigation and collection personnel; (c) failing to provide alternatives (as outlined in their requisites for participation in HAMP) to leav[ing] Plaintiff with no other option but foreclosure, and (d) failing to follow through on contractual obligations." <u>Compl.</u> ¶ 48. The only factual details in the complaint are to the effect that the plaintiff believes that she was improperly denied a refinance under H4H because the "defendants" failed to accept her accountant's explanation as to the proper calculation of her rental income. <u>Id.</u> ¶¶ 41-43. The allegations of the complaint are insufficient to state a claim against the defendants.

Under Massachusetts law, the covenant of good faith and fair dealing is implied in every contract. <u>FAMM Steel, Inc. v. Sovereign Bank</u>, 571 F.3d 93, 100 (1st Cir. 2009). The covenant requires that neither party do anything that would destroy or injure the right of the other party to reap the benefits of the contract. <u>Nile v. Nile</u>, 432 Mass. 390, 398, 734 N.E.2d 1153, 1160 (2000). There is, however, "no requirement that bad faith be shown" on the part of the breaching party. <u>Id.</u> at 398-99. Rather, "[a] plaintiff must show a lack of good faith," which may be inferred by the evidence. <u>Uno Rest. v. Boston Kenmore Realty Corp.</u>, 441 Mass. 376, 385 n.5, 805 N.E.2d 957, 964 n.5 (2004). "In the lender-borrower context, the implied covenant would require that the bank be honest in

its dealings with plaintiffs and that it not purposefully injure their right to obtain the

benefit of the contract."  FAMM Steel, Inc., 571 F.3d at 100 (internal citation and

punctuation omitted).

Here, Francisque has not alleged any specific facts to show that the named

defendants were not honest in their dealings with her or that they purposefully injured her

right to obtain the benefits of the contract.  Instead, according to the plaintiff, the

defendants referred her to 1ˢᵗ Alliance for a possible loan modification.  Despite her

allegation that the "defendants" misread her tax returns, the plaintiff has made it clear in

her complaint that she was working with 1ˢᵗ Alliance, rather than Quantum or the Trustee,

in an effort to obtain relief from her mortgage, and that her objection is that 1ˢᵗ Alliance

did not appropriately consider her rental income.  Francisque has failed to include 1ˢᵗ

Alliance as a defendant in this suit.  Since she has not stated a claim against the named

defendants, the claim for breach of the implied covenant of good faith and fair dealing

must be dismissed.

### D.    Mass. Gen. Laws ch. 93A

The defendants have moved to dismiss Francisque's 93A claim on the grounds that

she did not comply with the procedural requirements of the statute.  In particular, they

contend that she failed to send them a demand letter and failed to allege that such a letter

had been sent in her complaint.  Defs. Mem. (Docket No. 8) at 9-10.  Because the court

finds that Francisque failed to comply with the procedural requirements of the statute, her Chapter 93A claim is dismissed.[6]

Chapter 93A provides in relevant part that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."  Mass. Gen. Laws ch. 93A, § 9(3). "The statutory notice requirement is not merely a procedural nicety, but, rather, a pre-requisite to suit."  Robert v. Crowley, 538 F. Supp. 2d 413, 420 (D. Mass. 2008) (internal punctuation and citation omitted).  Thus, while a demand letter may be sent after suit is commenced, it must be sent before the 93A count is included in the complaint.  See Tarpey v. Crescent Ridge Dairy, Inc., 47 Mass. App. Ct. 380, 391-92, 713 N.E.2d 975, 983 (1999) (allowing plaintiff to amend complaint and add claim under Chapter 93A where demand letter sent after suit had commenced).  Moreover, a plaintiff must allege in the complaint that a demand letter has been sent in order to satisfy the procedural requirements of a 93A claim.  See Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286-87, 475 N.E.2d 727, 735-36 (1985) (confirming the requirement that plaintiff allege and prove the existence of a demand letter in order to sufficiently satisfy the requirements of a Chapter 93A claim); City of Boston v. Aetna Life Ins. Co., 399 Mass. 569, 574, 506

---

[6]  In light of this ruling, this court will not address the other arguments raised by the defendants in support of their motion to dismiss the 93A claim.

N.E.2d 106, 109 (1987) (stating that "[t]he failure of the City to allege the sending of a demand letter is fatal to its [93A,] § 9 claim.").

In the instant case the complaint does not allege the sending of a 93A demand letter.  Moreover, although plaintiff's counsel indicated at oral argument on the motion to dismiss that a letter had been sent, the defendants deny receiving such a written demand. No evidence of the letter's existence has been provided to the court.  Because the plaintiff has failed to comply with the procedural requirements of ch. 93A, this count must be dismissed as well.

## V.   CONCLUSION

For all of the reasons detailed here, Defendants' Motion to Dismiss (Docket No. 7) is ALLOWED.

    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge